141829 Advanced Steel Recovery v. X-Body Equipment. Thank you, Judge Prost. Your Honors, may it please the Court. The district judge in this case adopted a claim construction that excludes every embodiment disclosed in the two patents in suit. Far from denying that anomaly, the defendants embrace that wholeheartedly by arguing that the district court's specification discloses one embodiment and the claims cover a different embodiment. That's at the red brief at page 26, and it's also discussed in the Rule 28J letter. Now, this Court has made it clear that such constructions are rarely correct and that they must be supported by highly persuasive evidence. There is no such evidence in this case, and the red brief is silent on this issue. There's no evidence here of disavowal, of disclaimer, or lexicography by the patent applicant. Here, the district court correctly concluded that the claim term proximate end should be construed in accordance with its plain and ordinary meaning. But instead of turning to the intrinsic evidence in accordance with this Court's clear jurisprudence, the district court looked solely to one dictionary definition. In one dictionary, it was a secondary definition that was narrower than other broader. And what did you propose as your construction? We proposed in the district court, Your Honor, that the proximate end was the general area at the end of the container packer on the side opposite the transport container. And that's completely consistent with a slightly different but more general formulation that we discussed in the blue brief, which was a part or place, excuse me, which was the region that is opposite the distal end of the container packer, or in the case of the transfer base. Can you just, as a practical matter, tell me what that means? How far does it go? Is it anywhere along the container packer, or is it as long as it's halfway through? What is what you just articulated translate to its height? Well, Your Honor, our view is that this claim phrase is not a specific point, but is rather a region, that it's there in order to Okay, what's the region then? I mean, just look at figure one, and you've got a container packer. Is it the entire length of the packer, that the region that's covered is at the proximate end? It's certainly not the entire length of the packer, Judge Prost. So you articulated to me what your claim construction was. I don't know if you can give it to me again, but how does that translate to this diagram, to this figure? Sure. So the claim construction we proposed below, I'll state it again, is that the proximate end, and this is at A1683, but that the proximate end is the general area at the end of the container packer, on the side opposite the transport container. So the transport container, figure one, is element number eight, the shipping container, if you will. And so with respect to the transfer base, which is a subject of much discussion in the briefs, that that proximate end would be over, if we look to the extreme right edge Let's stick to the container package, to the proximate end of the container package. How far does your definition of end, proximate end, extend along that container package? Your Honor, I think it would be hard to say it's anything less than half, or to define it with more mathematical precision than the right side half of that container packer. It's clearly more than just the edge, which was the district court's incorrect construction. Counsel, what you just mentioned, you said the district court just limited the construction to the extreme end. Yes. But didn't the district court hold that it meant the extreme or last part lengthwise? I mean, why isn't last part something more than just the extreme end? Well, I don't think that's what the district judge meant, Judge Stoll. And that's evident in the decision of the district court, where there's a discussion of the doctrine of equivalence. And the court makes clear, and I believe that this is at A11, and I'll confirm that. But the district court makes clear that he was talking about or construing the proximate end to mean a particular location. And so that is an indication to me, I'm sorry it's at A, I thought it was at A11, maybe it's at A9. But the district court specifically said it was a particular location. And when doing the doctrine of equivalence analysis, the district court certainly didn't wrestle with the issue of whether, if it's a region that is associated with what's called the right side or the edge of the container pack or the transfer base. The district court never wrestled with whether that region would encompass up to, say, 35% of the distance to the far end. The district court found only that there was a point that was indicated by the use of the term proximate end, and that that point, that word was not used, but that I'm construing as edge, did not include a location that was 35% offset. Even though, in figure one, it is quite plain that in the preferred embodiment, indeed in all disclosed embodiments, the point of connection is offset from that extreme end by as much as 10%. So it's your position that even though that language that the judge initially used in the construction could have been broader, when he actually did his infringement analysis, he seemed to take a narrower view and just look at the extreme edge. Yes, and that's consistent with his analysis under the doctrine of equivalence, where he never wrestled with the question of how big the region was and could it include 10% but not 35%, and it's also consistent with what the court said about a particular location. And so the district court here, instead of looking at the intrinsic evidence, leaped directly to a dictionary definition that is quite... Yes, but looking at the intrinsic evidence, even if I agree with you it can't be edge, I'm less uncertain as to what you mean by proximate end. So if the plain, well, there's a plain meaning, but the ordinary meaning of proximate edge may be in dictionaries and otherwise would imply back edge. And if your only embodiment makes it clear because of the piston and cylinder not reaching the transfer base and being separated by the hydraulic power source, that it can't be back edge. But what can it be then? And I think Judge Probst asked you that question, and I just don't feel like your definition, which is way too amorphous, fits cleanly. It might be that the district court's definition is wrong, but I'm not loving yours. Because what I can't do in terms of a public notice function based on your definition is understand how far down the transfer base you can go and still have literal inference. Forget DOE. I need to know what does proximate end mean in terms of a literal infringement analysis. Are you telling me that the transfer base should be divided in half? There's a proximate end and a distal end, and anything up to the 50% mark is considered part of the proximate end. I'll tell you, that doesn't seem to me to fit the patent. It's not the embodiment, and it doesn't seem to me to fit within the language. So help me. Yes. Well, Your Honor, I can refer to the court to the Acumed decision, where the court was clear that claim constructions need not purge every line drawing problem from a claim construction. But you've got to give public notice, and I'm not getting it. I agree with that. What is the proximate end? How should I construe it? You're right. I think that it ought to probably include the only embodiment that stays in the patent. But what construction, then, does it mean for proximate end? I'm not saying you have to say 10% versus 12%. But do you mean the very back-end region, which generally… I mean, how do I divide this transfer base up? It just can't be cut in the middle. Everything is either distal or proximal. Right? That can't be right. That just doesn't feel supportable by the specs or correct as a matter of ordinary meaning. I understand, Your Honor. I would say this, that this is not… The use of these phrases, distal end and proximate end, are not so much used in their absolute sense as they are in their relative sense. And a person of skill in the art, reading that claim term, in the context of this specification, would conclude that the reference to the proximate end advises the person of skill seeking to build this invention or to understand its meets and bounds. It advises that person in terms of the orientation of this very large mechanical apparatus. And it advises that person of skill in the art that the power subsystem and the connection between the container packer and the transfer base should be at one end and that the extension of the container packer into this large shipping container should be at the other end. I agree that is less than completely precise. But time and again, this court has approved some constructions which leave reasonable line drawing problems to the trier of fact. It did that, it made that clear, I believe, in the Acumen case. And how is 35% a reasonable line drawing problem? 35% is a third of the way down. Yes. And unless I were to accept a literal infringement argument that could expand to the 50% mark, I don't see how I get to 35%. So how is it? Are you kind of giving up on the literal infringement idea and just putting your eggs in the DOE basket at this point? Or are you still of a belief that 35% is reasonable when talking about the back end? I think it could be because I think that a reasonable interpretation at a minimum is that the proximate end is a region. And it's a region associated with that far right extreme edge. And that it would be appropriate to let the jury decide whether or not that region that is associated with that end can include a third of the way down? Yes. I believe that is. No, you're not saying a third, you're saying 50%. In your view, there's no rational distinction. It's either 50% or it's nothing. Your view is we're not talking about 35%, we're talking about 50%. Honestly, I don't see how I could take any position other than that because I don't think there's a mathematical definition of end here that's possible. And there's nothing in the two figures, figure one and figure two, to support anything other than the end of the contained package. There's nothing in these figures that indicates to us, gives us any notice, that we're talking about a 50% mark, right? Well, can I refer, Your Honor, to figure four? In figure four of the patent, this is a piston and cylinder unit that operates inside the container packer to eject the material in the container packer into the shipping container. How do you square your reliance on figure four or figure five, which shows that element 58 is a different location? I square it, Your Honor, because in figure four, this is an exploded view showing a partially extended piston and cylinder unit. And element 58 points to the middle of that first telescoping cylinder so that when this push blade is pushed all the way forward, we have multiple sections that telescope forward to push that blade towards the distal edge. And so, in figure four, we see 58 pointing to that very first telescoping section. In figure five, the blade is completely retracted. This is a non-exploded view. The blade is completely retracted. And so, the lead line for 56 points to the overall piston and cylinder unit. And the lead line for 58, which is the proximate end of the piston and cylinder unit, points to essentially the edge or the extremity of that piston and cylinder unit. But our definition doesn't exclude the absolute extreme edge. It includes that. Our definition would be that it is a region that includes but is not limited to the extreme edge. So, I don't think that figures four and five are inconsistent. And it seems that a person of skill in the art, seeing that the connection on the transfer base in figure one is offset by as much as 10% from the very edge and that in figure four that there is a lead line going to something that is clearly not the extreme edge would conclude here that certainly this is a region we're talking about, not an extremity. But let me ask you one other question about claim one. What I would say is the second element when it's talking about the container packer. Do you have that here? Yes, I'm familiar with that language. Go ahead and find claim one. Yes. A container packer including a proximate end, a distal end with an opening, opposite side walls, a floor, and an interior. Yes. Now, from this language alone, I would understand proximate end to be one structural part of the container packer, distal end to be another structural part, opposite side walls to be a distinct structural part, a floor, and interior to be a distinct structural part. If I were to, which I think is a pretty normal thing in terms of reading claims when they list a container packer including this, this, this, this, you don't usually read the elements as intertwined or overlapping. You usually read them as distinct structural elements. I agree with that. So if that's true and the proximate end of the container packer and the distal end have to be different than the side walls, the floor, and the interior, don't they have to be the back and the front edges? Because they can't include the floor and they can't include the interior and they can't include the side walls. So that at least as far as the container packer goes, the proximate end really can't be anything but the back. If it creeps forward to the 35 percent wall, it's got to be including the interior, the floor, and the wall. This exact issue, Judge Moore was raised at the claim construction by the defendants. My friend argued then that the distal end with an opening required a structure. We argued that no, no structure is required for an end. The district court agreed with us and rejected that argument and concluded that no construction was necessary. The fact that he said no construction is necessary doesn't mean he adopted your construction, right? That's true. That's true. So tell me, forget about what the district court did. We do at least part to no vote. So what do I do with this? If these are elements that are listed, a container packer including these seem to be structural elements to me, how do I conclude that proximate end as used in this portion of the claim means anything other than the back side? Because a proximate end in this portion of the claim and in that second element in claim one is an orientational signal or a directional signal so that a person's skill in the art Think about it. It's a structural claim. A container packer including a proximate end, it doesn't sound like they're talking about an orientation. It sounds like they're talking about the structure. A distal end with an opening comma, opposite side walls, a floor, and an interior. Those sound like very discrete components of the container. Well, if the end, let me try this then, Judge Moore. If the end is, as the district judge found, the extreme edge of the container packer, then what would that be? That would either have to be on the floor, which is listed as an element, or on the edge of the side walls on the far right side, which is also an element. And so I think the more natural reading of this is that end refers to a region. Why can't it be the back? The back? There is no… The container has a back, right? In the front? The container packer does. The container packer does. The transfer base does not. And so we have to construe the term end consistently between the container packer and the transfer base. So the transfer base is like a table. It just ends. And then there are apparatuses that are mounted upon it, such as that power subsystem that is flush with the edge before the connection to the container packer. And so end here cannot be a structure. Okay, I have a really dumb question I don't know about the structure. You say it's like a table. In Figure 1 and Figure 2, it shows the hydraulic unit, and then it shows a line behind the hydraulic unit. Is that not a physical element, a physical wall? It's not a dotted line. It's a line. I assumed that to be part of the structure. See how it's purple and there's a roof, and it's purple and there's a bottom, and then there's that line to the right of element 17 or element 20, which is the hydraulic power source. Is that not a structural wall, a structural line? I don't believe... It is like a table, but the picture shows a line and not a soft line, a hard line. I assumed that that was structure. Am I wrong to assume that? I've never interpreted that as being any structural element. It's certainly not marked as such or discussed in the specification anywhere. If that is the proximate end and the district judge was right, then clearly elements 28 and 26, which are the connection between the proximate end of the transfer base using the claim language now and the container packer is obviously offset by a factor of what I estimate, just looking at this drawing, is 10%. And so that is what makes clear that the claim construction excludes the disclosed embodiments. He said that I confused him when I said purple. My clerk's actually, I have to have color code every element so I can understand where it starts and stops. I understand. And so the purple is ours. I was able to follow you, Judge Moore. Colors don't generally come in color. I do know that. My clerk's up here. The purple is mine, Judge. He doesn't know what the purple is. Sorry. I was able to follow the clerk. I'm way over and I'm very grateful to the clerk. We'll ensure two minutes of rebuttal if it's needed and we'll add four minutes to the other side. Thank you, Your Honor. Even if it's necessary. Thank you, Your Honor. I'm hoping it won't be necessary. May it please the court. The district court used the definition of the word proximate end of the container packer and said it has its plain meaning. And I will refer to a dictionary to show that with these types of structural objects, what we all know the word end means, which is the last or extreme part of the object. Except as your friend points out, if you look at Figure 1 and Figure 2, the same word end is used in the patent with respect to the transfer base as well as the container. So we're likely that it's necessary for us to construe it in the same way. And if you look at the figure, because of the generator or whatever it's called, the figure does not disclose an absolute end for the transfer base, which suggests that there is some give in that definition. Your Honor, I think that we are talking about two different ends in this case. There is the claim term that is the proximate end of the container packer, and yes, there's the claim term that is the proximate end of the transfer base, and presumably they're both proximate ends that are being discussed. And presumably the end would be defined in the same way with respect to the transfer base. Well, presumably they would be, but what I will say about that is we have a lot of evidence about what the word end means regarding the container packer in the specification and in the claim, and much less about the proximate end of the transfer base. So in the container packer, for instance, as Judge Moore aptly noted, the container packer has a proximate end. It doesn't even just have a distal end, but the distal end itself has an opening, which is given a separate number in the specification, and those are separate from the sidewalls and the floor. Then we find out, if you go down two more limitations, we labeled it 1E in our brief, the container packer drive, which is that hydraulic system we're talking about, has to be connected to both the transfer base and the container packer. That's already part of the claim. Then you come down five more limitations, and now it says, oh, it doesn't just have to be connected to the container packer and the transfer base, but this is where it has to be connected. So before we ever got to the limitation at issue, we already knew there had to be a connection between the hydraulics. Now it's saying where the connection has to be. That's the only purpose of saying proximate end, because otherwise you don't have to say anything, because it already has to be connected. The one other thing I will say about this is there's another claim term that was briefed, which is that the packer blade, which is that moving wall inside, has to both end up being retracted to a point proximate to the container packer proximate end and adjacent to the container packer proximate end. So the claim actually comes at this location of the container packer proximate end from both sides. It says the hydraulics have to be attached to the end in one direction, and that packer wall has to slide all the way back to be adjacent to that proximate end in the other direction. So in this case, when you're looking at proximate end of the container packer, the claim itself is very clearly using a specific location. It is saying that it has to be otherwise adjacent to an undefined region would be a meaningless concept. So do I understand that it's your position that the term proximate end could have different meanings in the claim? I don't think it does, but what I'm saying is that the term, as far as, there is no dispute in this case about the proximate end of the transfer base being at issue here. What we are talking about is the proximate end of the container packer. I believe it's used the same way in both. What I will say with respect to the transfer base, because they do point to the figure, and when you look at the language in the specification, the specification uses the word end, back end, front end, proximate end, to talk about the hydraulics, which is basically a telescoping pole. It talks about it with respect to the container packer, but when you get to the part of the specification that talks about the transfer base, and it actually talks about what the figure shows, it does not say it's attached to the proximate end of the transfer base. What the text related to the figure shows is that it is at a point forward from the transfer base, and that is column 3, lines 22 through 33. It says the end of the cylinder, but then it actually doesn't say that it's attached to the end of the transfer base. It says it's attached to a point forward on the transfer base, not to the end of the transfer base. Let me move you to DOE, which we didn't have much time to talk to your friend about, and let's leave the concept of vitiation to the side for now and just talk about functionally resolved. Why is there not, given the two expert declarations put in by your friend, sufficient basis to at least say that there's some sort of factual issue that needs to be resolved for us? Absolutely. So the first thing I would say about that is, with respect to the DOE argument, is that the function that is actually stated in the patent about how you use the hydraulics is to push rearwardly the entire container packer, and that is at column 4, lines 24 through 27. It says the function of that hydraulic is to push the entire container packer rearwardly. However, the declaration that we submitted said ours is not pushing the entire container packer rearwardly. We're not performing that function. We have a point that's closer to the middle on purpose because that doesn't just push, it pushes part of the container packer and it pulls a third of the container packer and we believe that's a superior design that provides more stability. Both the declarations provided by the plaintiff did not disagree that this didn't perform the function of just pushing, that it did this hybrid function of pushing and pulling. What they said was, it doesn't matter. It doesn't matter because we're going to identify the function as just moving the container packer back and forth and you can do that by attaching at any point. It doesn't matter where you attach a hydraulic. As long as the box moves, it's fine. And as far as side-to-side stability, which your designer said was improved, we're not going to dispute that, but what we're going to say is there are side rails that hold it in place anyway, so ultimately who cares if there's side-to-side stability. And that is the substance of the expert declaration. So I believe they misidentified the function. The function that's in the patent is a function of just pushing and then doing an entire extraction from the end and that is done specifically at the location of the end. That's not what they were talking about. We provided evidence that there were differences, actual differences in the physics of attaching to a point that was closer to the middle and rather than dispute that, they said there are other reasons it doesn't matter. The further thing is, with all due respect, so I think I've responded to that, but I think the initiation point is an important one. There was already a claim limitation, which was 1E in ours, that said you have to attach that container packer drive, that hydraulics. There's already a claim limitation that says they have to be attached and that you have to move the container packer. So that's done already. When you get to our limitation, it says it has to be at the end. That's the only addition. That's that language. Already there had to be a hydraulics attached to those two things and it already moves it back and forth. That function is a different part of the claim. This part of the claim says it specifically has to be attached to the ends and that function is pushing the whole thing and pulling the whole thing and that's a different function than just moving it back and forth. Moving it back and forth… It's a way argument rather than a function argument. Well, I mean possibly. I see it as a different function, but then even if you interpret it as clearly a different way, we reach the same legal result. And there's no really other way to talk about this really outside this concept of initiation because once you're already moving the container packer back and forth, then all that they've done in their Daxberg declarations is take a line through the point of location. They just said it doesn't… If you look at those declarations, and I would invite you to, it doesn't say… It just says it doesn't matter where you attach it. It doesn't matter. So what they're doing is they're literally taking a line through the language of it has to be attached to the end because they say it could be attached to the bottom. It could be attached to the side. It doesn't matter. It just doesn't matter. And you can't do that. The Supreme Court in Warner Jenkinson is still the law of the land. You can't just take a line through part of the claim language and say we don't need it. Here is your problem with pushing and pulling stuff. First off, it's mostly pushing. There is little force that's being exerted in terms of a pull rather than a push. So just based on the 35%, I mean, it's a straight numerical thing. It's not very complicated. It's mostly pushing. So the question is, is it insubstantially different because it also exerts a pulling force? And your expert said the reason it is is because it adds stability. And they're saying, well, no, the way the claim element is, there's side rails, so that extra stability is redundant, quite frankly. It might be helpful in an environment where there aren't side rails, but in this environment where there are side rails, the stability is not relevant. So I guess why does that make for substantial differences? Right. So this claim doesn't have any side rails required by it. They were saying in the specification there were side rails. The claim doesn't require side rails. They were just saying you could use side rails, and that would provide the stability that you're talking about. I mean, that's a hypothetical. That's not a claim requirement. In fact, we had argued in claim construction, which is part of the record, that we thought that the concept of the container packer guide was talking about side rails, and the judge rejected that and said, no, no, no, you don't have to have side rails. So this claim doesn't require that. The other thing is there are limits to this concept of doctrinal equivalence, and one of those limits, when you're talking about, and this is what the judge basically looked at, was similar to Searfoss and Sage, the cases say when you have a locational requirement, you can't just ignore that and say it's fine to just do this somewhere else. And when we're talking about going 15 feet down a 40-foot box and attaching it to another point, that's not a matter of degree. I mean, that's not within the general body of law of doctrinal equivalence. You're assuming you've won on your claim construction argument. You're assuming that 15 feet down a 40-foot box is as opposed to zero feet down a 40-foot box, and the problem is, I mean, I don't think this panel has come to a clear rest on that issue in light of figure one and figure two, and I guess what I'm trying to reconcile in my mind is, suppose they prevail on claim construction to the extent that it isn't the very back edge, but the proximate nearness to the back edge, maybe as much as 10% away from the back edge, certainly not half, I don't see how that makes any sense, but I'm trying to see how you come out if you don't win on claim construction on DOE, if instead figure one and two are in fact part of the capture of what proximate end means, and then where are we? So is there any way maybe you could shift your argument for a minute and help me figure out why it may not matter? If I'm with you, there's no literal infringement because it can't be 50%. I'm with you on that, but if I'm struggling on what it might be able to be 10% because I'm having trouble reading out the only embodiment in the claim, then where are we on DOE? So I have basically three things to say about that. One is an interpretation of the word end consistent with what the district court did and consistent with if you're using proximate end of the transfer base. I believe if you look at the text that this is one case where it doesn't talk about attachment to the end, and the only place it did was the originally filed claims, and so I thought it was a Johnson and Johnston. Johnson and Johnston, there are multiple embodiments, and some claims can speak to some, and some claims can speak to others. But if you wanted an interpretation of that word end, that even though the text of the patent does not call it the end, would be it. What I would say about it is the power system subsystem 20 forms the approximate end. There's nothing else. There's no space. This is given that you're putting a power subsystem to form the end. I think you don't understand the nature of my question. First off, I don't understand that argument to be one that you've raised about the power source being the back end of the transfer base, and I'm not sure that makes sense given that the transfer base and the power source you described is expressly a separate element. So I don't think you can win on it, and I don't think you made it. But even if you did, I think you're misunderstanding my point. My point is, suppose you don't get back end. Suppose approximate edge is something that includes at least 10%, but maybe not much more than that because it wouldn't be consistent with the ordinary meaning. So what happens then? What happens then is you have to look at the expert declarations and say, did they do an analysis that said that you achieved the same function the same way to achieve the same result in a way that actually analyzed those issues or in a way that drew a line through claim language, and vitiated the locational aspect of this? And so if they had said, well, given what actually happens is the push versus the pull constitutes essentially the same movement of matter, and here's the math to do it. They did some analysis. That would be one thing. But what they said is, as long as you're moving a box, it doesn't matter where you attach it. And so the actual analysis that was performed in those declarations literally draws a line through the language. We already have a claim limitation that says you have to attach the hydraulics. That's a separate claim limitation. This says you have to attach it at the end. And what they said is, no, you don't. Counsel, setting your vitiation argument aside, why is there no genuine issue of material fact here on the doctrine of equivalence, given, let's assume, as Judge Moore said, that the claim construction is more than just the extreme end? Right. So there is no analysis comparing that concept of end with the concept of being attached in the middle that was performed in the declarations that were done. We said there's a substantial difference in attaching it at the end versus attaching it in the middle. It provides more stability. And what they said is, you could put side rails there, and that would be something that would solve the problem, basically. But that's not a proper analysis of function, way, and result. You can't just hypothesize other elements and say that that's a way that you could achieve the same result, even though not required by the claim. We have a ruling on this that's not part of the appeal, that there's no side rail requirement in the patent. Our designer submitted a declaration that said by attaching it at a point far from the end, you achieve better side-to-side stability. They said, I don't see that as being an issue because you can put side rails. Side rails can stop it from pushing against the sides to kind of focus it. That hypothesis is not an appropriate function, way, result analysis. What about at page A1933 where the expert says, I don't think this is true. He says, Mr. Dennis claims that its cylinder and where it connects to the hopper is better because it increases side-to-side stability, but I don't think it's true. The reason he doesn't think it's true is because of the possibility of side rails. What about near the bottom of that same declaration, the same paragraph where he explains by being below the center of gravity, both the cylinder and the acculator cylinder drive the hopper in precisely the same way. Right. And the way that he's talking about is that it pushes, he defines the function earlier in the declaration and he says that's just moving the box back and forth. And that that's done the same way because you're doing it from a low point on the box. But what he says is that the stability issue can be obviated by putting side rails there because you can bang into the side rails instead of going off the edge. But I'm focusing on a way, because like Josh Croce, I understand your main argument to be they perform substantially different ways. One just pushes, one pushes and pulls. Right. And so what he's saying here is no, they both operate the same way because of the placement of the piston and cylinder below the center of gravity and that's what causes it to drive the unit. If the function is to move the container packer back and forth, right, then he's saying the way this operates is to place it below the center of gravity and then it's going to move it. So basically the analysis that's being provided is it sort of doesn't, you don't have to attach it to the end, you can attach it anywhere. If it's below the center of gravity, that's fine. But you already, you know, so yes, that does come back to my fiduciation argument. I mean, that is true. But I also believe, I mean, the patent itself, column 4, 24 to 27, says it's pushing rearwardly is the function of that drive. I mean, that's what you're doing with the container packer. And so this idea of pushing and pulling is really a different thing. And so I don't think that it's, that it's been addressed. I mean, as far as the, and then it, yeah. Is there something though that, you say they didn't address pushing versus pulling and you might be right because I don't see that in either of the two declarations which I just sat here and read. But is that a substantial difference? That, this is a question of fact, it's on summary judgment, they just have to raise a genuine issue of fact. Right. Is there some substantiality to the difference between one of them pushes only and one of them primarily pushes but partially pulls based on where it's listed? So we said, we provided evidence from a designer that said that that will increase side-to-side stability. The reason that they gave to try to rebut that was this idea that you could use different elements that are not required by the claim to overcome that problem. I mean, I just, that just does not, that's not an appropriate function when result analysis to say that you do, in fact, have the same function and way and result. To say that you need other elements, we're going to hypothesize the existence of other elements. So the stability point goes with the result then and you're saying we do operate in a different way and it is a substantially different way because, look, it produces an added benefit that the other way doesn't produce. It has other disadvantages too. I mean, it's not as compact of a design. I mean, the hydraulics that we have sit, we don't have the mobility in our device that they talk about in the patent because the hydraulics being part of the base where they have wheels. They try to put everything on top of the truck bed and have the two hydraulics in line. We have a much longer hydraulic on the back of our container packer because we don't move it around the yard. It just sits there. So it's a fundamentally different concept when you have what they talk about in the patent which is one hydraulic on the transfer base and another hydraulic inside the container packer that work together. Then when you have this system where you don't and you attach the hydraulics somewhere totally different. Is that different in the record? Yes, yes. Where would that be? So it's shown on, it's a way, it's discussed in the dentist, I believe it's generally discussed in the dentist declaration at, well, I don't know if we talked about the mobility issue but if you, in the dentist declaration but I believe it's in the dentist declaration which is, starts at 1628, I believe. But I also think that the difference, the visible difference is actually in the record at 1630 where we have, where we show an exploded view of the entire active loader packer and we have one hydraulic that's entirely in a permanent base that sits on the bottom and then you have this container packer that sits on top of the whole thing and has its own system. That's actually a different point in the appeal that we raised was that the other reason we don't meet proximate end, and this is another issue, is on our container base and it's in the reply brief, for example, a photo of it, at their page 24, it's, excuse me, on page 23 and it's A53, I believe, or no, they say it's in our brief at 53. We have, rather than do everything in line the way they talk about in the patent, our container packer goes far back beyond the sidewalls, goes at least six feet back beyond the sidewalls. So, and there's like diagonal bars that come down and block that back blade from coming all the way to the back of the container packer. The same proximate end issue that we've talked about is present there. There's no way it can go all the way to be adjacent to that end of the container packer. They didn't make a DOE argument in this case. So if you find that the proximate end of the container packer means the actual end of the container packer and for whatever reason you didn't feel comfortable with the DOE argument, then you can also say, oh, you're right, you did argue in summary judgment also and there's a record of this, that that packer blade never gets adjacent to that end at the same end we're talking about at the container packer. Did the district court rule on that? No. That is something we submitted. The district court said in common parlance, this is a no-brainer. You're supposed to be attached to the end, you're attached way far away. That's not the end. It's nowhere near the end. Your declarations don't show me that it's only insubstantially different than the end. I think you're vitiating the claim limitation. That was the order. The district court did not address the second point. Before this court were to send this back for more analysis, it's fully briefed, it was on summary judgment, it's the same word end, is that the packer blade does not retract all the way adjacent to that end and there is no DOE argument. If that would be an independent basis for affirmance, I believe that the district court did the right thing on both of those grounds. I'm just saying if there was some discomfort about the DOE argument, that would be alternative grounds for affirmance. Did you make that on appeal? Yes. It's pretty extensively briefed, but it's toward the back of the brief. We've far exceeded time. Thank you. Thank you, Your Honor. I'll go very quickly. First of all, one thing that hasn't been discussed is the fact that we put in substantial evidence on function, way result, and two expert declarations, the Smith and the Wellins declaration. The entire sum and substance of the Dennis declaration that was submitted does not, well, it amounts to no more than saying, not that it doesn't perform the same function in the same way or the same result or that the differences are substantial. All it says is that our attachment point yields greater stability. Even if that's true, that does not obviate the obvious question of fact, of material fact here, based upon the evidence that we submitted. All it means is that perhaps my friend has demonstrated that their machine, their apparatus, is more optimally constructed than the preferred embodiment, that it performs another function, but it doesn't create an issue as to whether or not, in fact, that attachment point serves the same function identified in the patent itself. So I don't think that argument assists them. Very quickly, Judge Stoll, the citation I was fumbling for earlier is at page A11 in the district court's summary judgment order. That's where the reference to particular place is made in that order. I do want to reiterate that we are talking about a situation here where the parties are in agreement that the district court's construction excludes all disclosed embodiments. So unless this is one of those rare cases, then supported by highly probative evidence, then I don't think the district court's claim construction can be sustained. And if I could have five more seconds, I understand that the court is uncomfortable with what we have proposed. At summary judgment below, excuse me, at claim construction below, my friend proposed a construction that the court may actually like more for the term end. And that proposal below was that, excuse me, I'm not finding immediately my notes, but the proposal below is cited in our briefs and it was to the effect that it is a part or place at or adjacent to an extremity. And so I don't know if that satisfies the desire for more precision here, but that would certainly perhaps be more powerful for the court than the back half. Thank you. Thank you very much for your time. Thank you. And we thank both counsel and the case is submitted.